UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA GONZALEZ WHITE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:24-cv-03095-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to magistrate judge jurisdiction. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, remand for further proceedings, and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1975, applied on February 22, 2022 for DIB, alleging disability beginning December 9, 2017. Administrative Transcript ("AT") 111, 127. Plaintiff alleged she was unable to work due to anxiety, depression, fibromyalgia, asthma, high blood pressure, pain in knees, high cholesterol, pain in lower back and feet, and short term memory loss. AT 204. In a

decision dated January 30, 2024, the ALJ determined that plaintiff was not disabled.[1] AT 111-129. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2023.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 9, 2017 through her date last insured of June 30, 2023.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, right shoulder tendinitis, depressive disorder, and anxiety disorder.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except the claimant can occasionally reach overhead with the right, dominant upper extremity. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can never climb ladders or scaffolds or crawl. The claimant can never work at unprotected heights. The claimant must avoid concentrated exposure to moving mechanical parts. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks using judgment limited to simple work related decisions. The claimant can occasionally interact with the public.

6. Through the date last insured, the claimant was unable to perform any past relevant work.[2]

7. The claimant was born [in 1975] and was 47 years old, which is defined as a younger individual age 18-49 on the date the application was filed.

8. The claimant has a limited education.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.[3]

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from December 9, 2017, the alleged onset date, through June 30, 2023, the date last insured.

AT 113-128.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the residual functional capacity (RFC) is not supported by substantial evidence because the ALJ did not address the combination of plaintiff's impairments; (2) the ALJ's step five findings conflict with the RFC; and (3) the ALJ erred by discounting plaintiff's subjective symptom testimony.

---

[2] Plaintiff previously worked as an agricultural produce sorter. AT 127.

[3] Based on vocational expert (VE) testimony, the ALJ found that plaintiff could perform jobs such as mail clerk, marker, and housekeeper. AT 128.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Subjective Symptom Testimony

Plaintiff claims that the ALJ did not provide legally sufficient reasons for discounting her subjective symptom testimony. She argues that the ALJ's reasons consist of "boilerplate" and do not identify what specific evidence undermined plaintiff's statements, as required. Defendant counters that the ALJ "provided valid and specific reasons to support his finding, including Plaintiff's (1) inconsistent objective medical evidence and (2) improvement with treatment."

(ECF No. 16 at 12.)

       1. <u>Plaintiff's Testimony</u>

At the November 16, 2023 hearing, plaintiff testified that, due to slipped discs and pinched nerves in her back, she had "pain when I flex, pain when I walk, pain when I sit, and when I'm sitting down a lot or laying down." AT 144. The pain occurred "every day, all the time." AT 144. Plaintiff testified that, to treat the pain, she used a girdle and had received more than 20 epidural steroid injections, which helped for about two weeks. AT 145, 146. She had done physical therapy, chiropractor, acupuncture, and "the drill," all of which helped temporarily. AT 146. Plaintiff testified that she couldn't lift her arm for long and had pain in her knees and feet, which she attributed to her disc problems and pinched nerves. AT 147. She testified that she could sit for 1.5 hours before she had to put her feet up for 15 minutes, could stand for 30 minutes, and could walk near her house for about half an hour. AT 148-149. She had been prescribed hydrocodone for pain but only took it twice a week because it gave her stomach pain. AT 145. Plaintiff testified that she was taking medication for depression and seeing a counselor. AT 152. She was recently hospitalized for depression and anxiety. AT 153. She was also taking medication for daily migraines. AT 153-154.

In a September 2020 Adult Function Report, plaintiff stated that injuries to her lower back, right knee, and pain in her feet[4] "prevent and limit my ability to work. I am unable to bend without pain radiating throughout my back. I can lift no more than 5 lbs and I cannot stand for prolonged periods on average of 30 minutes." AT 497. Plaintiff stated that she woke up with pain and had to put on compression socks, braces, and a back belt in order to do light housework and had to take "constant breaks." AT 498. She stated that the pain limited her ability to stand, reach, walk, sit, and concentrate. AT 502. In a January 2022 Adult Function Report, plaintiff reported similar issues with pain and depression. AT 520-526.

////

---

[4] Plaintiff refers throughout the record to being injured in a fall or accident. The ALJ noted that she was evaluated for a Worker's Compensation claim associated with a fall on December 9, 2017. AT 120, citing AT 693. This is the alleged disability onset date.

2. The ALJ's Decision

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that she is unable to work because of her lower back and arm. She testified that she is unable to carry heavy objects. She testified that she has pain and cramping all the time in her back. She testified that her pain level is seven and a half out of ten, but that she only takes pain medications two or three times per week. She testified that her back pain radiates to her feet. She testified that psychiatric impairments caused sadness, tiredness, and feeling drained. She testified that medication helped with psychiatric symptoms.

AT 119; see 142-154 (hearing testimony). The ALJ also noted plaintiff's statements that "she could only lift up to five pounds and walk for twenty minutes before she needed to stop and rest for two hours," that she used a waist brace, and "that her impairments also affected her abilities to see, remember, understand, and get along with others." AT 119, citing AT 502-503, 525.

The ALJ found that plaintiff's "statements about the intensity, persistence, and limiting effects of [her] symptoms . . . are inconsistent with the overall evidence which as discussed below establishes that the claimant has severe impairments, but that the severe impairments are not as limiting as alleged." AT 119.

The ALJ next laid out a detailed summary of the medical record, beginning in December 2017 and ending in October 2023. AT 120-122. This summary included occasional comparisons of specific evidence to plaintiff's testimony. In July 2018, the ALJ noted, "[d]espite the claimant's allegations that she would have pain after walking twenty minutes or a small block, during an evaluation . . . she reported that pain was aggravated by walking or sitting for more than one hour." AT 120, citing AT 791. At the hearing, plaintiff testified that she could comfortably sit for an hour or more, consistent with her later statement. AT 147. Essentially, the ALJ contrasted plaintiff's hearing testimony that she could walk for about half an hour (AT 149) to her July 2018 report that her pain was aggravated by walking for more than an hour.

The ALJ summarized the medical record from 2019 and 2020 without comparing plaintiff's subjective testimony to specific evidence. AT 120-121. In November 2021, the ALJ noted, "the claimant indicated that her pain was controlled with medication, which she uses sparingly and is suggestive that the claimant's pain is not as severe or as limiting as alleged." AT

6

121, citing AT 1394.  The cited note from a pain treatment center indicated that plaintiff "reports with the use of her pain medication her pain remains well controlled.  The last time she picked up her Norco was in August, so she uses it very sparingly."  AT 1394.

In March 2022, the ALJ noted, "[d]espite allegations of being unable to work, . . . the claimant reported that she wanted to find a job that she could do without hurting her back."  AT 121, citing AT 1659.  The context of this clinical note is as follows:

> Pt shared details on how she finds jobs to maintain her financial stability however, she fell at work and now has a bad back, bad knee and struggles with weather change and has not worked since 2017 however, has tried to work and unable to do so about one year ago.  She was in so much pain she had to stay home.  Pt shared that she has struggled her entire life and wants to find a job she can do without hurting her back.

AT 1659.

In June 2022, the ALJ noted, "[a]lthough the claimant reported joint and back pain . . . a physical examination was normal, while her mood and affect were appropriate."  AT 121, citing AT 1620.  The ALJ did not compare plaintiff's statements to any other evidence through the date last insured, June 30, 2023, though he summarized the medical record through October 2023.  AT 121-122.

      3.   Legal Standard

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78.  That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.  With respect to pain testimony, the standard is met when an ALJ cites "specific, clear, and convincing examples across a multi-year period contrasting [the claimant's] subjective pain testimony with objective medical evidence." Smartt, 53 F.4th at 499.

4. <u>Analysis</u>

Here, the ALJ provided a boilerplate statement that plaintiff's testimony was "inconsistent with the overall evidence" followed by a detailed overview of her medical history.  Without more, this is insufficient.

The ALJ's summary of the medical record contained a handful of comparisons of plaintiff's testimony to the evidence.  In July 2018, the ALJ pointed out, plaintiff made an inconsistent statement about how long she could walk without aggravating her pain symptoms (half an hour versus one hour), a relatively minor inconsistency.  In November 2021, plaintiff reported that her pain was well-controlled with medication.  In March 2022, plaintiff said she was trying to find a job she could do without hurting her back after a past attempt at work was unsuccessful, a statement which does not significantly undermine her testimony as to pain.  And

in June 2022, despite plaintiff's reports of back pain, a physical and mental examination was normal.

The ALJ did not find that plaintiff failed to seek treatment or follow a prescribed course of treatment. Nor did he evaluate plaintiff's daily activities in determining her credibility. Overall, the ALJ cited little specific evidence over a five-year period of alleged disability that suggested plaintiff's pain testimony was not credible. Compare Smartt, 53 F.4th at 497-500 (ALJ properly discounted subjective pain testimony "by identifying specific discrepancies between [plaintiff's] testimony and the objective medical evidence" across a multi-year period, finding daily activities inconsistent with alleged severity of limitations, and noting generally conservative treatment). Though defendant's brief cites evidence in support of the ALJ's credibility finding, the ALJ's analysis of this issue is insufficient under Lambert. The court finds reversible error on this basis, and plaintiff is entitled to summary judgment.[5]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

---

[5] The court does not reach the remaining claims.

9

proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: December 3, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/whit3095.dib.ckd

10